In the Matter of Lonnie W. NANCE, and Wanda Nance, Debtors.

Bankruptcy No. 79–01343–SJ–13.

United States Bankruptcy Court,
W. D. Missouri,
St. Joseph Division.

Feb. 1, 1980.

Sharon A. Cooney, Smith, Gill, Fisher & Butts, Inc., Kansas City, Mo., for Shenandoah Ins. Associates.

Gerald L. Liles, Bauman & Liles, St. Joseph, Mo., for American Bank of Tarkio.

Hugh A. Miner, Miner & Speiser, St. Joseph, Mo., for debtors.

ORDER DENYING CONFIRMATION OF THE PROPOSED PLAN OF ARRANGEMENT WITHOUT PREJUDICE TO ITS AMENDMENT TO CONFORM TO THE BANKRUPTCY CODE WITHIN 20 DAYS

DENNIS J. STEWART, Bankruptcy Judge.

The debtors, operators of a small business within the meaning of the new Bankruptcy Code,[1] have filed in this court a somewhat

---

1. Under the provisions of the new Code, small businesses are, under certain circumstances, eligible for relief under chapter 13 as well as wage and commission earners. See section

vague and ambiguous plan of arrangement under chapter 13 of that Code. By means of the material provisions of that proposed plan of arrangement, resolving the prevalent ambiguity therein in favor of its compliance with the governing provisions of the Code,[2] the debtors propose the following:

(1) To pay off a total indebtedness of $66,443.51 by means of the terms of the plan of arrangement;

(2) To pay so much per month as is necessary completely to extinguish this outstanding indebtedness (at 100% of value, without any composition of it) within the maximum five-year period permitted under § 1322 of the Code;

(3) In order to accomplish this end, accordingly, to pay a combined payment to creditors under the terms of the plan of some $1,107.31 per month; [3]

(4) To make this payment from the proceeds of the business, which average some $2,333.33 per month, plus sundry other monthly income of $260.00 [4] and a current supply of cash contended to be in the vicinity of $5,000.00;

(5) To pay from the available sums, an additional amount of $2,278.20 per month to secured creditors and for other regularly recurring monthly expenses.[5]

The confirmation of the plan of arrangement in this case has been opposed by means of written objections filed by the creditors American Bank of Tarkio, Missouri, and Shenandoah Insurance Associates, Inc. d/b/a Ross Insurance, both of whom principally [6] found their objections upon the

---

109(e) of the Bankruptcy Code to the effect that "an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $100,000 and noncontingent, liquidated, secured debts of less than $350,000, or an individual with regular income and such individual's spouse, except a stockbroker or a commodity broker, that owe, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts that aggregate less than $100,-000 and noncontingent, liquidated, secured debts of less than $350,000 may be a debtor under chapter 13 of this title."

2. The crucial ambiguity in the proposed plan of arrangement highlights the difficulty in confirming that plan. The paramount ambiguity is in the amount of the recurrent monthly payments. In indefinite terms, the plan proposes to pay unsecured debts—some $66,443.51—within the maximum five-year period permitted by § 1322 of the Bankruptcy Code, at the rate "of at least $8,000.00 annually, such payments to be made on an unequal monthly level since the business of the debtors is seasonal. Lower payments are contemplated during the months of December, January, February, March, April and May, and multiple payments are contemplated during the months of June, July, August, September, October and November. Payment of at least $500 shall, be made each month." If only $8,000.00 per year is paid, however, it requires little in the way of sophisticated arithmetic to determine that more than eight years will be required to complete payment of the proposed plan of arrangement, a duration far in excess of the five years permitted by § 1322, *supra*. In order for the plan to be completed within the allowable five years, a much greater yearly sum, $13,288.70, would have to be paid to the unsecured creditors through the plan.

3. See note 2, *supra*.

4. The income in addition to that earned by the business is scheduled by the debtors as $50.00 monthly as a salary for "part-time police" work and $210.00 "rental income."

5. The breakdown of the other monthly payments, as disclosed by the schedules, plan, and evidence herein is as follows:

[Amended by order dated May 1, 1980]

| | |
|---|---|
| payment to secured creditors | $ 970.00 |
| payment to International Harvester Credit Corp. | 126.30 |
| total estimated monthly expenses (from schedules) | 1,181.90 |
| | $2,278.20 |

6. The other objections raised by the objecting creditors appear to be subsidiary to this principal objection in that the other objections are sustainable on the same grounds as the principal one. The creditor Shenandoah additionally objects on the ground that the plan must necessarily require in excess of five years for its consummation. But the basis of this objection is the evident incapacity of the debtors to make payments at the rate necessary to complete the plan within five years. See note 2, *supra*. Shenandoah also objects on the ground that "the value of the property to be distributed under the plan on account of each allowed unsecured claim would be less than the amount that the creditors would be paid if the debtors' estate were liquidated under Chapter 7 in violation of 11 U.S.C. § 1325(a)(4)." As is noted in the text of this memorandum, it is the fact that the

alleged inability of the debtors to make the necessary payments as required by § 1325(a)(6) of the Code.

In this regard, amidst all the other complexities wrought by the unresolved vagueness of the new Code, the meaning of "inability" as it is the focus of § 1325(a)(6), *supra,* might well constitute a threshold matter, under the facts and circumstances of the case at bar. According to the facts set out above, the material portions of which were established by the evidence adduced in the confirmation hearing of January 18, 1980,[7] the debtors unquestionably have the ability to make the monthly payments which they have proposed to make under the plan of $500.00 per month.

But the paramount question of this case is whether it can realistically be expected that such payments as are necessary can be long continued when there are other, substantial payments which must be made from the monthly income. This question, which is of great potential importance,[8] must be obviated in this case by means of the court's considering the obvious question posed by the objections under the rubric of "good faith" within the meaning of § 1325(a)(3).[9]

In this regard, the court cannot but find that the submitted plan of arrangement provides no good faith method by which, from the existing resources, the debtors can reasonably be expected to pay off the indebtednesses which it proposes to pay within a five-year period. This is so, even if the court may give its consideration to the debtors' counsel's unsupported contention that the debtors, in addition to the assets which have been scheduled, have a cash repository of some $6,500.00. For the excess of payments to be made over cash available—even accepting without question the debtors' perhaps optimistic [10] estimates of what their business income will be [11] —assures the exhaustion of that $6,500.00 long before the debts can be retired within the five-year span.[12]

Nor is it possible for the court, under the facts and circumstances currently known to it, to grant any consideration to the possibility that the debtors may propose anything less than a 100% plan of payment.

property would pay creditors' claims at approximately 93% of value, see note 13, *infra,* which requires that the debtors' propose a plan, as they have, which is apparently beyond their capacity to fulfill. Finally, Shenandoah and the American Bank of Tarkio both object on the grounds that the secured creditors have not accepted the plan and it does not, as is otherwise required by § 1325, offer them present cash value of the security. Again, the plan proposed is marred by the apparent financial incapacity of the debtors to make such a proposal.

7. The debtors appeared personally at the confirmation hearing and by Hugh A. Miner, their counsel. The objecting creditors appeared respectively by Sharon A. Cooney, counsel for Shenandoah Insurance Associates, Inc., and Gerald L. Liles for the American Bank of Tarkio.

8. As in the case at bar, cases are imaginable in which the debtor might pass the "inability" test of § 1325(a)(6) even when other considerations would make the plan infeasible and thus violative of the "good faith" standard of § 1325(a)(3).

9. That subsection provides as follows: "The court shall confirm a plan if . . . the plan has been proposed in good faith and not by any means forbidden by law."

10. The debtors, although granted an explicit opportunity to do so, have not adduced any credible evidence respecting the *range* of monthly business incomes, although they admit that it varies radically. And see note 11, *infra.*

11. The testimony of the debtors' accountant as to the average monthly business income of the debtors, although rendered in summary form, was admissible under the provisions of Rule 1006 of the Federal Rules of Evidence and was received without the objection of any creditors.

12. The annual payment to unsecured creditors which is necessary to permit its consummation within five years is $13,288.70. See note 2, *supra.* Thus, some $1,107.31 monthly is necessary. Additionally, the debtors' other obligations require them to expend some $2,278.20. See note 5, *supra.* This makes a total necessary monthly expenditure of $3,385.61, which is $792.28 per month more than the $2,593.33 which the debtors represent to constitute their available income. Thus, in less than a year the $6,500.00 in cash which is contended to be available would be consumed by the excess of payments over income.

For, according to the schedule of assets which has been filed herein by the debtors, immediate liquidation would result in payment at the rate of 93% to all creditors.[13] Thus, any plan providing for less than 93% payment could not be confirmed under the provisions of § 1325(a)(4) which requires that a plan must provide for a payment of an amount at least equal to the amount which would be received if liquidation took place.[14]

Nor can the court confirm the plan conditionally upon the debtors' somehow reducing the payments which they now propose to make outside the plan. For there is nothing before the court to indicate that these outside payments are not as necessary to the consummation of the plan as those which are proposed to be made within it.[15] Nevertheless, the debtors will be granted a reasonable 20-day period in which to demonstrate otherwise.

It is therefore, for the foregoing reasons,

ORDERED AND ADJUDGED that confirmation of the proposed plan of arrangement herein be, and it is hereby, denied without prejudice to its appropriate amendment within 20 days of the date of entry of this order.

13. According to the debtors' schedules of assets and liabilities, immediate liquidation of assets would result in approximately 93% payment of all the unsecured claims—$61,625.76 to apply against the $66,443.51 in unsecured debts. This result is arrived at by means of the following calculation:

| | |
|---|---|
| Total property | $149,339.97 |
| Less exempt property | 19,350.00 |
| Total available property | $129,989.97 |
| Less secured claims | 68,364.21 |
| Total available for remainder of claims | $ 61,625.76 |

14. Again, it appears beyond the capacity of the debtors to pay the sum of $61,625.76 within a five-year period. For this would require $1,027.09 per month, an amount which, in view of the other monthly obligations, appears to be far out of the debtors' range. See note 12, *supra.*

15. In fact, the evidence presented would indicate that they are necessary. See note 12, *supra.*